**E-FILED on __11/30/05__**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| McKESSON CORPORATION, and HBO & COMPANY, INC., <br><br>        Plaintiffs, <br><br>       v. <br><br> ARTHUR ANDERSEN LLP, ROBERT A. PUTNAM, and DOES ONE THROUGH TWENTY, <br><br>        Defendants. | No. C-05-04020 RMW <br><br> ORDER DENYING DEFENDANT PUTNAM'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION <br><br> **[Re Docket Nos. 6, 14]** |

     Defendant Robert A. Putnam moves to dismiss all claims against him under Rule[1] 12(b)(2). For the reasons given below, the court denies the motion.

## I. BACKGROUND

     Plaintiff McKesson Corporation acquired plaintiff HBO & Company, Inc., ("HBOC") in January 1999. Accounting irregularities led to numerous lawsuits against the plaintiffs in this court, *see In re McKesson HBOC, Inc., Securities Litigation*, No. C-99-20743 RMW (N.D. Cal.); *In re McKesson HBOC, Inc., ERISA Litigation*, No. C-00-20030 RMW (N.D. Cal.), and elsewhere, *see, e.g., Gilbert v.*

---

[1]     All references to a "Rule" are to a Federal Rule of Civil Procedure.

1     *McKesson Corp.*, No. 02VS032502C (Ga. State Ct.); *Saito v. McKesson HBOC, Inc.*, 806 A.2d 113

2     (Del. 2002).  In the present action, McKesson and HBOC seek damages from defendants Arthur

3     Andersen LLP and Robert Putnam for their alleged misconduct related to the acquisition.

4         The plaintiffs asserts two causes of action—the fifth and sixth of the complaint—against Putnam.

5     The fifth is for equitable indemnification for the cost of settling suits by shareholders, or a declaratory

6     judgment that the defendants are liable for such costs.  The sixth is for equitable indemnification for

7     damages the plaintiffs may have to pay shareholders under California Corporations Code section 25500, or

8     a declaratory judgment that the defendants are liable for such damages.  Putnam, a Georgia resident, moves

9     to dismiss the two causes of action against him under Rule 12(b)(2).  He claims that his contacts with the

10    forum state, California, are insufficient to make this court's exercise of jurisdiction over him constitutionally

11    permissible.

12        From the admissible evidence and the parties' papers, Putnam appears to have the following

13    contacts with California:

14    1.    From 1996 to July 15, 1999, Putnam "was directly responsible for Andersen's audits or quarterly

15          reviews of HBOC or he directly supervised the persons performing" them.  Compl. ¶ 2.  "Putnam

16          personally participated in each meeting of the HBOC Audit Committee from February 1996

17          through November 1998 and either personally made the presentations to the Audit Committee, or

18          directly supervised Andersen's presentations." *Id*. ¶ 70.  (HBOC was not based in California, but

19          was acquired by a company that was in early 1999.)

20    2.    "McKesson reasonably relied on Andersen's and Putnam's express expert representations that

21          HBOC's financial statements required no material adjustments." *Id*. ¶ 8.  McKesson is a Delaware

22          corporation but has its principal place of business in California. *Id*. ¶ 12.

23    3.    Putnam is allegedly liable to the plaintiffs for costs from certain suits against them; these suits might

24          include one of the two related suits before this court, which is in California, and a series of suits,

25

26

27

28

1    *Oregon v. McKesson HBOC*, No. 307619, and related cases Nos. 311269, 311747, 320819,

2    405792, and 303857, which are before the California Superior Court.[2]  *Id*. ¶¶ 3, 110-121.

3    4.    "Putnam participated in the HBOC Audit Committee meetings and either made" or supervised

4          statements that Andersen "was not aware of any significant problems with HBOC's accounting

5          practices or internal controls and that Andersen had no disagreements with management."  *Id*. ¶ 9.

6    5.    Putnam's former employer, Andersen, had a San Francisco office during the HBOC acquisition.

7          *Id*. ¶ 14-15.

8    6.    "As the engagement partner for the HBOC audits, Putnam approved all of the audit plans for the

9          HBOC audit, directly supervised the accountants who performed the field work and personally

10         endorsed Andersen's unqualified opinions for the 1996 and 1997 audits.  For the quarterly reviews

11         performed for HBOC in 1997 and 1998, Putnam approved the work programs, directly

12         supervised the accountants who performed the field work, and personally endorsed the unqualified

13         review opinions Andersen provided for the first three quarters of 1997 and 1998.  Putnam also

14         directly supervised Andersen's audit of HBOC's December 31, 1998[,] financial statements and

15         personally reported to McKesson that Andersen's audit procedures had not uncovered any

16         material errors."  *Id*. ¶ 69.  Putnam told McKesson that there were no material misstatements in

17         HBOC's financial statements.  Miller Decl., Ex. I (Yodowitz Depo. at 821:25-822:16).

18   7.    "When McKesson was performing pre-[m]erger due diligence, Putnam served as the spokesperson

19         for Andersen in its communications with McKesson and" McKesson's outside auditor, Deloitte &

20         Touche, LLP.  Compl. ¶¶ 7, 71.  Putnam told Deloitte personnel that he believed HBOC's internal

21         controls were strong.  Miller Decl., Ex. C (Putnam Depo. at 48:7-15).

22

23

24         [2]        The complaint is vague.  McKesson mentions the two related cases before this court and
           those before the California Superior Court, as well as five cases before Georgia state courts, a suit by the
           Merrill Lynch Fundamental Growth Fund Inc., and a suit by Donald R. Yurick.  Compl. ¶ 3.  McKesson

25         does not state before what court or courts these last two cases are pending.  McKesson refers to this
           collection of lawsuits as "the 'Private Actions.'"  *Id*.  In the fifth cause of action, McKesson alleges that it

26         has settled "certain of the Private Actions," but fails to specify which ones.  *Id*. ¶ 111.  In the sixth cause of
           action, McKesson asserts that "[i]f plaintiffs in the Private Actions establish a claim for damages under Cal.

27         Corp. Code § 25500, these damages were caused, entirely or in part, by Andersen and Putnam."  *Id*. ¶
           117.  McKesson claims that it is not seeking in the instant case "indemnification or contribution for any

28         amount it paid to settle the securities class action pending before" this court.  Opp'n at 6 n.2.

8.    Putnam knew but did not disclose to McKesson or Deloitte that HBOC had used side letters.  *Id.* (Putnam Depo. at 51:13-22).  McKesson alleges that Putnam should have caused Andersen to disclose this to HBOC's audit committee.  However, McKesson produced no evidence that Putnam was asked about or had a duty to report the existence of side letters to McKesson.

9.    In July 1998, Putnam met with McKesson personnel in California "in connection with HBOC's due diligence of McKesson" and, during later follow-up, had "other incidental contacts with McKesson personnel telephonically."  Putnam Decl. ¶ 4.

10.   In November 1998 and January 1999, Andersen sent "comfort letters"[3] to McKesson in California. Miller Decl., Exs. F, G (filed under seal).  McKesson claims but presents no admissible evidence to support that Putnam "was responsible for approving these comfort letters" and "knew that McKesson was relying on these comfort letters."  *See* Opp'n at 8.  Putnam knew McKesson received these comfort letters.  Miller Decl., Ex. F (Putnam Depo. at 11:11-17).

11.   Putnam appeared for deposition in San Francisco on thirteen days during an SEC investigation. Opp'n at 3; *see* Miller Decl., Ex. L (Putnam Depo.).  During this deposition, Putnam was defended by an attorney from Chicago and two from Los Angeles.  Miller Decl., Ex. L (Putnam Depo. at 1). The plaintiffs also make arguments filed under seal that Putnam has other purposeful contacts with California, *see* Opp'n at 9, but the evidence contradicts their arguments, *see* Miller Decl., Ex. J at 3-4, Ex. K at 10-11 (filed under seal).  The court thus will not consider the sealed evidence further.

      The plaintiffs also assert that "Putnam is personally liable to McKesson or HBOC because he either directly participated in Andersen's wrongful conduct, or directly supervised persons who did so."  Compl. ¶ 11.  Putnam is only specifically mentioned in certain paragraphs of the complaint.  The complaint contains six causes of action, all of which are directed against Andersen and only two of which are directed against Putnam.  In its opposition to Putnam's motion to dismiss, the plaintiffs seek to treat allegations in the complaint that Andersen did something as allegations that Putnam and Andersen did that.  *See* Reply at 4-

---

[3]    "A comfort letter . . . is a letter that's typically issued from an accounting firm to a company or an underwriter in connection with a transaction.  It gives the results of specific procedures that the accounting firm's done at the request of the company or underwriter."  Miller Decl., Ex. H (Peard Depo. at 143:3-9).  "A comfort letter is a term used whereby either underwriters or the company asks the auditor to go through and give some level of assurance . . . related to some of the information in the S-4."  *Id.*, Ex. F (Putnam Depo. at 11:2-6).

1   5.  Rule 8(f) requires pleadings to be "construed as to do substantial justice."  Substantial justice requires

2   this court to read allegations in the complaint that mention only Andersen as allegations against Andersen

3   only, and consider only allegations (that are otherwise uncontroverted by affidavit) that mention Putnam as

4   evidence of his contacts with California on his motion to dismiss.

## II.  ANALYSIS

6       Putnam's contacts with California are few, and the parties do not dispute that California courts lack

7   general jurisdiction over him.  This court must decide whether it has specific jurisdiction over Putnam for

8   each of the two causes of action asserted against him.

### A.      Standard

10      Due process and the state long-arm statute limit the jurisdictional reach of a federal district court.

11  *Data Disc, Inc. v. Systems Tech. Assoc.*, 557 F.2d 1280, 1286 (9th Cir. 1977).  California's long-arm

12  statute is "coextensive with the outer limits of due process," so the two parts of the analysis collapse into

13  one.  *Id*.

14      Due process prevents a court from exercising jurisdiction over a defendant who lacks minimum

15  contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair

16  play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945) (internal quotation

17  marks omitted).  A defendant's "conduct and connection with the forum [s]tate" must make it reasonable for

18  the defendant to "anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson*,

19  444 U.S. 286, 297 (1980).

20      Plaintiff has the burden of establishing that the court has personal jurisdiction over a defendant.  *See*

21  *Rio Properties, Inc. v.. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002); *Doe v. Unocal Corp*.,

22  248 F.3d 915, 923 (9th Cir. 2001).  When a district court rules on a motion to dismiss for lack of personal

23  jurisdiction without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of the

24  jurisdictional facts to withstand the motion.  *Unocal*, 248 F.3d at 922.  In order to make a prima facie

25  showing, plaintiff must allege facts which, if true, would be sufficient to establish personal jurisdiction.  *Id.*  If

26  not directly controverted, plaintiff's version of the facts is taken as true for the purposes of the motion.  *Id*.

27  Conflicts between the facts stated in the parties' affidavits must be resolved in plaintiff's favor during a

28  *prima facie* jurisdictional analysis. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

1    Specific jurisdiction is appropriate when a foreign defendant's less substantial contacts with the

2    forum give rise to the causes of action in the suit. *Hanson v. Denckla*, 357 U.S. 235, 250 (1958).  The

3    Ninth Circuit evaluates three criteria to determine whether specific jurisdiction exists. *See*, *e.g.*, *McGlinchy*

4    *v. Shell Chem. Co.*, 845 F.2d 802, 816 (1988); *Fed. Deposit Ins. Corp. v. British-American Ins. Co.,*

5    *Ltd.*, 828 F.2d 1439, 1442 (1987).

6    First, the defendant must make contact with the forum state that constitutes purposeful availment.

7    *McGlinchy*, 845 F.2d at 816.  This requirement aims to ensure that a defendant's conduct and connection

8    with the forum are such that he should reasonably anticipate being haled into court there.  *Haisten v. Grass*

9    *Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986) (citing *Burger King*

10   *Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).  Physical contact is not a necessary condition and

11   "purposeful direction" of an out of out-of-state act with in-state effects may suffice.  *Harris Rutsky & Co.*

12   *Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003); *see also Burger King*,

13   471 U.S. at 476; *Calder v. Jones*, 465 U.S. 783, 789-790 (1984).  The "effects" test requires that the

14   defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3)

15   causing harm that the defendant knows is likely to be suffered there.  *Dole*, 303 F.3d at 1111.[4]

16   Second, the litigation must arise out of that contact with the forum state.  *McGlinchy*, 845 F.2d at

17   816.  The Ninth Circuit's test for the "arise out of" prong is a "but for" test.  *Unocal*, 248 F.3d at 924.  The

18   court must ask whether the action would exist but for the contacts.

19   Third, the exercise of jurisdiction must be reasonable.  *McGlinchy*, 845 F.2d at 816.  A lesser

20   showing of contacts with the forum may be sufficient if considerations of reasonableness so require.

21

22   _____

22        [4]    Putnam asserts that, in the Ninth Circuit,  the "effects test" applies only to intentional torts.

23   Reply at 9-10.  Some courts have indeed hinted that this is true.  *See Dole*, 303 F.3d at 1111 ("Under our
     precedents, the purposeful direction or availment requirement for specific jurisdiction is analyzed in

24   intentional tort cases under the 'effects' test."); *CE Distrib., LLC v. New Sensor Corp.* 380 F.3d 1107,
     1111 (9th Cir. 2004) ("When an intentional tort claim is asserted, purposeful availment of the privilege of

25   conducting activities in the forum state can be met by the . . . the 'effects test.'" ); *see also Rosenberg v.*
     *Seattle Art Museum*, 42 F. Supp. 2d 1029, 1037 n.8 ("[I]it appears that only an intentional, not a

26   negligent, tort can satisfy the Ninth Circuit's effects test.").  Putnam's interpretation of Ninth Circuit law is
     too narrow, though.  In *Bancroft & Masters, Inc. v. Augusta Naional Inc.*, the Ninth Circuit described

27   the effects test more broadly: "Express aiming . . . is satisfied when the defendant is alleged to have engaged
     in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state."

28   223 F.3d 1082, 1087 (2000).  Cases routinely state that an intentional act, rather than an intentional tort, is
     a necessary prerequisite to purposeful availment. *See*, *e.g.*, *Dole*, 303 F.3d at 1111.

ORDER DENYING DEFENDANT PUTNAM'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION—No.
C-05-04020 RMW
JAH                                      6

1   *Haisten*, 784 F.2d at 1397.  A court must consider seven factors when assessing the reasonableness of

2   jurisdiction: (1) the extent of defendant's purposeful interjection into the forum; (2) the burden on the

3   defendant of litigating in the forum; (3) the extent of conflict with the sovereignty of defendant's state; (4) the

4   forum state's interest in adjudicating the issue; (5) the most efficient judicial resolution of the dispute; (6) the

5   importance of the forum to plaintiff's interest in convenient and fair relief; and (7) the existence of an

6   alternate forum.  *British-American*, 828 F.2d at 1442.

7   **B.     *Sher v. Johnson***

8           The parties spend much time discussing *Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990).

9   In *Sher*, Judge Alex Kozinski, writing for the panel, examined whether a Florida law firm, Johnson, Paniello

10  & Hayes, and its individual partners had minimum contacts with California based on their representation in

11  Florida of a California resident, Sher.  *Id*. at 1360.

12          Sher was criminally charged in Florida, and he and his California attorney traveled to Florida to find

13  Floridian counsel.  They settled on Johnson, Paniello & Hayes ("the partnership"), and Paul Johnson, one of

14  the partners, served as head counsel for the defense.  *Id*.  The partnership sent bills and made phone calls

15  to Sher in California, and Johnson made three trips to California to meet with Sher regarding his defense.

16  *Id*.  Sher and his wife gave the partnership a promissory note and a deed of trust secured by their California

17  residence.  *Id*.  The same U.S. Attorney's Office that was prosecuting Sher was also investigating Johnson,

18  and Johnson did not disclose this fact to Sher.  *Id*.  The Eleventh Circuit reversed Sher's conviction partly

19  because Johnson's conflict of interest between himself and Sher violated Sher's right to competent counsel.

20  *Id*.

21          Judge Kozinski stated that when considering minimum contacts, a court must "determine if the

22  defendant's contacts are substantial and not merely random, fortuitous, or attenuated."  *Id*. at 1362 (internal

23  quotation marks omitted).  According to Judge Kozinski, the facts that the partnership had represented a

24  California resident and had visited and phoned that California resident in California in connection with its

25  representation of him were "too attenuated to create a substantial connection with California."  *Id*. (internal

26  quotation marks omitted).  The representation alone was insufficient to give California jurisdiction over the

27  partnership, and the visits were "little more than a convenience to the client."  *Id*.

28

ORDER DENYING DEFENDANT PUTNAM'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION—No.
C-05-04020 RMW
JAH                                                              7

1    Only when the deed of trust was considered did Judge Kozinski deem the partnership's contacts

2  with California to be sufficient for jurisdiction.  *Id*. at 1363.  He stated that

3        By requiring the execution of a deed to California real estate, the partnership was looking to
         the laws of California to secure its right to payment under its contract with Sher.  The
4        execution of the deed contemplated significant future consequences in California: perfection
         of the partnership's security interest would require filing in the California recorder's office;
5        judgment on the deed would require the application of California law; enforcement of such
         a judgment would require the action of a California court.
6
   *Id*. (internal quotation marks and brackets omitted).
7
   **C.    Application**
8
        **1. Purposeful availment**
9
        The evidence indicates that Putnam was providing accounting services for a Georgia-based
10
   company primarily in Georgia.  There is no evidence that Putnam solicited business in California or acquired
11
   real property in California.  Putnam's contacts with McKesson were related to his work for HBOC.
12
   Plaintiffs claim that HBOC's acquisition by a corporation with its principal place of business in California
13
   was fortuitous, that HBOC could have been purchased by a corporation with a principal place of business
14
   anywhere.  McKesson points out that Putnam allegedly made inaccurate statements to it.  Putnam visited
15
   California and spoke on the phone to McKesson in California regarding the HBOC acquisition.  Putnam
16
   sent or caused to be sent comfort letters to McKesson in California.  The evidence indicates that all this
17
   was part of Putnam's work for Andersen and HBOC, but Putnam's assurances were nonetheless directed
18
   to McKesson in California; Andersen generated comfort letters only because McKesson was purchasing
19
   HBOC.  Putnam's communications with McKesson were purposeful acts directed to McKesson in
20
   California.
21
        Granted, this is a close case, but *Sher* is distinguishable.  The relationship between the law firm and
22
   the defendant centered around a Florida prosecution in *Sher*.  Here, McKesson was operating out of
23
   California.  The actions of Putnam here seem more akin to those at issue in *Bancroft & Masters, Inc.*,
24
   where the Ninth Circuit held that sending letters from Georgia to California accusing the California plaintiff
25
   of trademark infringement was sufficient to give a California court specific jurisdiction over the Georgia
26
   defendant.  223 F.3d 1082, 1085 (2000).  Putnam's California contacts constitute "purposeful availment"
27
   of California.
28

ORDER DENYING DEFENDANT PUTNAM'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION—No.
C-05-04020 RMW
JAH                                                        8

**2. Relatedness**

Putnam claims that his actual contacts with California cannot be related to McKesson's claims for contribution and indemnity because there is no allegation that he is a joint tortfeasor.  The court notes that if this is true, it appears to be not so much a problem of relatedness as a failure to state a claim upon which relief can be granted.  Putnam's communications with McKesson in California allegedly led to the HBOC acquisition; the numerous other suits against McKesson and HBOC are related to the plaintiffs' claims for contribution and indemnity in this action.

**3. Reasonableness**

Jurisdiction over Putnam is reasonable.   He has been to California before.  While he protests that he is a man of modest means, he has not shown it would be an undue hardship on him to travel from Atlanta to San Jose; both cities have large airports.  Putnam's counsel is apparently from Chicago.

The court notes that it would appear to impose no additional burden on McKesson to litigate this matter in Georgia, as McKesson is already involved in five lawsuits there.  The plaintiffs are corporate defendants and do not have to travel in any exact sense, and they presumably have retained counsel in Georgia.  Conversely, Putnam is not presently a party to any other lawsuit in California.  Putnam, as a flesh-and-blood person, would have to travel to California to attend a trial here.  Three times as many potential witnesses are located in Georgia than in California.  Rosenberg Decl. at 1-2.  While Georgia might be a more convenient forum than California for this litigation, the court in *Sher* reiterated that "any disputes about the inconvenience of a California trial are more appropriately resolved through a motion for change of venue, rather than through dismissal for lack of jurisdiction."  911 F.2d at 1365 n.5.

### III.  ORDER

For the reasons above, Putnam's motion to dismiss under Rule 12(b)(2) is denied.

DATED:      11/21/05                              /s/ Ronald M. Whyte
                                               RONALD M. WHYTE
                                               United States District Judge

1

**Notice of this document has been electronically sent to:**

2

**Counsel for Plaintiffs:**

3

4

James E. Lyons         apark@skadden.com
Timothy A. Miller      tmiller@skadden.com

5

**Counsel for Defendants:**

6

Steven J. Rosenberg    sjrlaw@aol.com
Gwyn Quillen

7

8

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for
e-filing under the court's CM/ECF program.

9

10

11

12

**Dated:**        11/30/05                          /s/ JH
                                        **Chambers of Judge Whyte**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER DENYING DEFENDANT PUTNAM'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION—No.
C-05-04020 RMW
JAH                                          10